## In re SACKETT.

### Patent Appeal No. 4703.

Court of Customs and Patent Appeals.
April 5, 1943.

Harold R. Savage and Roberts, Cushman & Woodberry, all of Boston, Mass., and Cushman, Darby & Cushman, of Washington, D. C. (Arlon V. Cushman, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office. The Primary Examiner rejected all of appellant's claims, 1 to 15, inclusive, and 17, in what appellant states is a continuation-in-part application for a patent relating to an alleged invention involving the use of a combination material for filling the space between the inner and outer soles of a shoe and imparting other characteristics to the shoe. The claims on appeal relate to a method of making the shoe, the shoe when made according to the method, and the shoe filler composition.

Claims 11, 14, 15, and 17 recite elements which involve precipitation. These claims among others had been rejected by the examiner upon the prior art. Appellant in

228

this court moves to dismiss the appeal as to them. Said motion will be granted.

Claim 1 contains the limitation here in controversy, as do all the others, and is therefore illustrative of all the claims on appeal. Claim 1 reads: "1. Method of making shoes, which comprises the step of applying between the inner and outer soles a uniform composition comprising a gelatinous precipitate as a sleeking agent and *a resinous material characterized by being derived from resinous wood and containing 50% or more insoluble in aliphatic hydrocarbon liquids,* in a liquid solvent vehicle containing a volatile component, a plasticizer, and a granular body material. [Italics ours.]

The invention is well described by the Primary Examiner in the following language: "In the manufacture of shoes, the bottom margins of the upper and the welt, if one is present, are interposed between the marginal portions of the insole and outsole. A cavity is thereby formed between the central portions of these two soles, and this cavity is conventionally filled with a plastic filler. This application relates to a specific composition for use as such a filler. The filler composition described is made by combining a cellulose ester, a resinous material, plasticizer, suitable solvents for these various components, and granular cork. The cellulose ester acts as a sleeking agent and may be cellulose nitrate or cellulose acetate obtained from film scrap. The resinous material is 'obtained by the solvent extraction of resinous woods with benzol and contains approximately 50% or more gasoline or aliphatic hydrocarbon-insoluble material'. [sic] The plasticizer for both the cellulose ester and resinous components may be tricresyl phosphate. Alternatively, the plasticizer for the resinous component may be a mixture of free fatty acids and resinous acids which applicant terms 'Pine fatty acid', but which, more accurately, appears to be tall oil. When this mixture is used as the plasticizer for the resinous component, dibutyl phthalate, a plasticizer for the cellulosic ester, at least, is also used. The granular cork may be wetted with water to prevent the solvents from penetrating the cork."

In view of our conclusion it is not necessary to set out the references which were relied upon by the examiner.

The first ground of rejection on the part of the examiner, which upon appeal was affirmed by the Board of Appeals, was to the effect that the specification of the instant application was indefinite and contained new matter, and that the disclosure was inadequate to support the claims. The examiner also rejected the claims upon the prior art. The last ground of rejection was expressly disapproved by the board and is not of concern here.

In order to understand the holding of the examiner and of the board it is important to carefully consider the disclosure in appellant's original application, of which the instant application is claimed to be a continuation-in-part, and also to note carefully the disclosure of the instant application and the proposed amendments thereto.

Appellant's original application, filed September 27, 1935 (the instant application was filed June 17, 1938), disclosed a composition or mixture to be used as a filling or binding agent between the inner and outer soles of shoes. The composition was composed of "powdered rosin B" and distilled rosin residue in certain quantities, to which were added naphtha, film scrap, tricresyl phosphate, ethyl acetate, and granulated cork. When the cork granules were thoroughly coated, the mixture was ready to use in the liquid state.

All of appellant's claims in the original application were rejected on the ground, among others, that they were unduly broad.

As we understand it, "rosin B" is the lowest grade of rosin (which is sometimes called resin) and is chiefly characterized by the fact that it is the residue after most of a valuable constituent, abietic acid, has been removed from the resinous materials extracted from pine. Appellant's instant disclosure relating to the rosin content (which is the critical matter with which we are concerned) is in the following language: " * * * binder component * * * produced by combining a certain resinous material (which is more particularly obtained by the solvent extraction of resinous woods with benzol and contains approximately 50% or more gasoline or aliphatic hydrocarbon-insoluble material) with * * * [other materials]."

Appellant sought to amend this last above quoted disclosure of the instant application by adding thereto language explaining that the resinous material "is composed in considerable proportion or completely of a resin or a resinous material which is characterized by being substantially insoluble in gasoline."

While appellant seems to argue here that the disclosure of his instant application is

sufficient, he contends that his original disclosure should be considered, since he now claims that his instant application merely more fully describes the material, "rosin B," disclosed in his first application. In his instant application, as originally filed, no mention was made as to the rosin disclosure in his original application. By subsequent amendments, which were held to be new matter, he sought to link up the disclosures of the two applications and to further more specifically limit the invention by adding additional language, which is not a matter of concern here. He urges here most strenuously, as he did before the tribunals below, that his "rosin B" disclosure is of itself sufficient, and that *in the instant application he seeks only to set out a well-recognized description of a well-known product, rosin B.*

Before discussing the holdings of the tribunals below, the query is at once presented: If the above-quoted limitation in the claims at bar merely recites details concerning, or a definition of, "rosin B," why file a continuation-in-part application at all? No other differences between the two applications have been mentioned as being pertinent here.

Appellant argues that numerous authorities, such as a bulletin of the Hercules Powder Company (Exhibit A), an article by F. P. Veitch entitled "The Federal Naval Stores Act (published in Vol. 16, No. 6 of *Industrial and Engineering Chemistry*), The Condensed Chemical Dictionary, various patents, and other recognized chemical authorities, show the characteristics of "rosin B," and that one of the chief characteristics shown by some of the authorities relied upon is that in a typical example of the analysis of "rosin B" it is shown that there is 51.5 per cent gasoline-insoluble material therein. It is then argued that, having disclosed "rosin B" with its properties well-known in the prior art, appellant, in the instant application, merely responded to the expressed desire of the examiner and defined or disclosed more specifically what he had already, in his original application, sufficiently disclosed.

There is much contention as to whether or not the above authorities relied upon as explaining the characteristics, use, and prior art knowledge of "rosin B" are properly in the record, and the question is also presented as to whether or not (if they are not properly in the record) this court can take judicial notice of the same. As we see it, it is wholly immaterial whether such documents are, or are not, properly in the record, because at most they are not alleged to show anything more than *one of the chief characteristics* of "rosin B" and we are certain that if the disclosures in the applications are deficient, the matter which appellant seeks to have us consider in the way of the above citations, as well as affidavits, will not supply the deficiency. We think the examiner expressed the proper viewpoint on the question, and we feel justified in quoting from his statement at considerable length:

"At page 5, lines 13 to 16, of the original disclosure, applicant states that the resinous material 'contains approximately 50% or more gasoline or aliphatic hydrocarbon-insoluble material'. Thereafter, by an amendment inserted after line 28 of page 5, applicant adds that the resinous material 'is composed in considerable proportion or completely of a resin or resinous material which is characterized by being substantially insoluble in gasoline' * * *. It is considered that the words 'or completely' are drawn to new matter, and their cancellation was therefore required. It is believed that the original expression 'approximately 50% or more' gasoline-insoluble material implies that there is also present an appreciable precentage of gasoline-soluble material, and the omission of such gasoline-soluble material from the composition makes a significant change in its nature. This conclusion is further strengthened by a consideration of the rest of the paragraph in which the objectionable new matter appears and the amendment made at page 7, line 14, together with the remarks accompanying them. These two amendments seek to indicate that 'free rosin' or 'ordinary rosin' is undesirable and *disadvantagesous* [sic], and applicant seeks by amendment to omit this material and thereby change the nature of the composition.

"It would appear that applicant did not at all appreciate that completely gasoline-insoluble resinous material might be used in his composition at the time he filed the present application, for in his affidavit submitted May 28, 1941 (Exhibit R) he states that the resinous material of the present application is 'powdered rosin B', 'B Wood Rosin', 'Wood Rosin B', 'Belro Rosin', or 'Belro Resin'. Applicant's Exhibits A, N and P indicate that this resinous material is 51.5% or 60% gasoline-insoluble. It is not seen how applicant can now contend that the 40% or more of gasoline-soluble material is of no use in his composition and does not materially affect the

nature of the composition; nor it is understood how he can now say that '50% or more' was intended to include 100% and at the same time contend that he was merely trying to describe 'Wood Rosin B' or 'Belro Rosin'.

"Applicant's description of the resinous component of his composition is considered to be inadequate to describe the material used with sufficient definiteness so that one skilled in the art would know exactly how to practice the invention. The best statement of the nature of the resinous material is given at page 5, lines 13 to 15, which state that it 'is more particularly obtained by the solvent extraction of resinous woods with benzol and contains 50% or more gasoline or aliphatic hydrocarbon-insoluble material'. Applicant fails to state what kind of resinous wood is extracted. Different kinds of woods yield different resinous materials. Moreover, merely extracting most woods with benzol will not give a resin which is 50% or more gasoline soluble. This is illustrated by the Hall 2,193,026 patent, page 1, column 1, lines 40 to 45. It is there pointed out that when extracting pine wood by use of gasoline, the resinous extract amounts to about 0.9 barrel per ton of wood, whereas with the use of benzol, the same wood yields 1.13 barrels of resin. It is obvious that the difference of 0.23 barrel is gasoline-insoluble material which is obtained by extraction with benzol. Thus, the benzol extraction of pine wood yields 1.13 barrels of which 0.23 barrel or about 20% is gasoline-insoluble. It follows that something more must be done to raise the gasoline-insoluble material to 50% or more. Exactly what further steps are gone through will have an important bearing on the nature of the resinous material. No such further steps are specified by applicant."

Discussion here of the Hall patent is deemed unnecessary.

It will be observed that in the above-quoted portion of the examiner's statement it is pointed out clearly that the amendment sought to disclose the benefits of the use of a material which might be largely or "completely" of a resinous material which is substantially insoluble in gasoline. That was not appellant's disclosure in the instant application when he stated "approximately 50% or more" of such gasoline-insoluble material, nor was it the original disclosure of the first application when he specified "rosin B", because under his own analysis "rosin B" is shown to possess ofttimes nearly 50 per cent of gasoline-soluble matter.

Following the above-quoted excerpt from the examiner's statement, we find therein the following:

"* * * The specification as it now stands and will stand in spite of the entry of the exhibits and affidavits, is in no way made more definite. Assuming, however, that applicant wishes to actually amend the present disclosure by specifying that the resinous material described at page 5, lines 13 to 15, is 'B Wood Rosin' or 'Belro Resin', such an amendment would be regarded as drawn to new matter for the following reasons.

"The present application is a continuation-in-part of application Ser. No. 42,513, filed Sept. 27, 1935. The prior application has a single reference at page 7, line 4, to the use of 'powdered rosin B'. There is also mentioned for use in the same composition 'distilled rosin residue' (page 7, lines 4, 5). To these resinous components are added cellulose ester, plasticizer, solvents, and granular cork. The present application, being a continuation-in-part, contains some matter which is present in the prior application and some additional matter. Applicant does not specifically point out in the present application what portion of it is supposed to be also present in the prior application. He now argues that the 'resinous material' described at page 5, lines 13 to 15, is the 'powdered rosin B' of the prior application. No reason is seen for accepting such an *indentification* [*sic*]. The present application in no way identifies the 'resinous material' as 'powdered rosin B'; the description of the 'resinous material' given is insufficient to define it as being any particular resin at all for the reasons given above in holding the description inadequate."

We call especial attention to the fact that appellant urged in his brief before the board (which is of record) that it was rosin of the lowest quality that he found most advantageous in making a proper combination for the purpose intended, and that the less abietic acid (the valuable constituent in the resin) it contained and the more insoluble it was in gasoline, the better it would be for his purpose. It seems clear to us that this fact was a discovery which was not in the mind of the applicant when he filed his original application or when he filed the instant application. He nowhere taught, in either application, that 50 per cent gasoline-soluble matter was

disadvantageous but by amendment sought to insert that which the Patent Office, and we, regard as new matter. It is also our view that the instant specification is too indefinite to support the claims at bar, and that there was an inadequate disclosure, in both applications, of the subject-matter of all the claims at bar.

The decision of the Board of Appeals affirmed the examiner's views as to the new matter and also, by the use of somewhat different language, approved of the reasoning of the examiner on the question of sufficiency of disclosure. We quote the following from its decision:

"One of the reasons urged by appellant in traversing this ground of rejection is that this application · is stated to be a continuation-in-part of his application 42,-513, in which the resinous material was stated to be 'rosin B.' There was no statement, however, in the earlier case that the rosin B possessed the characteristic above referred to. An affidavit and exhibits have been filed, however, in this case which we believe show that, at the date of the filing of the original case, the Hercules Powder Co. had on the market a product which was then designated as 'rosin B', which possessed the characteristic under consideration.

"While in some cases where a trade name or term is well-known, it has been regarded as sufficient disclosure so that those skilled in the art would understand how to carry out the procedure in which the matter designated by the trade term was an element. It is considered, however, that the evidence of record does not justify the conclusion that 'rosin B' was generally known to those skilled in the art. Indeed, it appears that the Hercules Powder Co. soon dropped this term and gave the particular product a different trade name. If a patent had issued on the disclosure of the first application, we\ do not consider that it would have been reasonable to have expected the public to undertake investigations in order to discover, if possible, the nature of the rosin B referred to.

"Even if the reference to rosin B in appellant's first application could be regarded as a sufficient disclosure, we think that he cannot rely upon this disclosure in the second application as there is no statement in the later case that the resinous material having the particular property above referred to and extracted from resinous wood by the use of benzol is the rosin B of the earlier case. In an application designated as a continuation-in-part we consider that the only portions of the earlier case which can be relied upon in the later case are those which are substantially the same. Here the applicant might well have had in mind when he filed the later case, some other resinous material than the 'rosin B' of his earlier application."

It will be noticed that the board has called attention to the fact that in the "earlier case" there was no disclosure of the all-important characteristic (the limitation in the instant claims) of "rosin B," and it further pointed out that even if the reference to "rosin B" in the first application could be regarded as sufficient disclosure, it did not believe appellant could rely on this disclosure in the second application, since there is no statement therein that the resinous material was "rosin B." It is further pointed out by the board that at the time of filing the original application, Hercules Powder Company probably did have a "rosin B" which possessed the characteristic under consideration, but that there was no showing, as there was in the case of In re Gebauer-Fuelnegg et al., 121 F.2d 505, 28 C.C.P.A., Patents, 1359, which involved "plioform" and "pliolite," to the effect that such "rosin B" of the Hercules Powder Company possessed the desired characteristics which appellant now seeks to incorporate into a patent or that such "rosin B" product was, at the time of filing the original application, a trade-name or term so well-known to those skilled in the art as to have been regarded as a sufficient disclosure.

Appellant makes no contention here that his disclosure of "rosin B" is sufficient by reason of the fact that the Hercules Powder Company at one time sold rosin under a trade-name, "Rosin B." He urges that a disclosure of "rosin B," under all the circumstances, was a disclosure of the characteristic embraced in the limitation of all the claims at bar. We agree with the board in its conclusion that "the applicant might well have had in mind when he filed the later case, some other resinous material than the 'rosin B' of his earlier application."

In conclusion, it is our view that appellant's disclosure in the instant application is not supported by his disclosure in his original application and that his disclosure in both applications, considered separately or together, is not sufficient to support the claims at bar. Notwithstanding the appellant's contention that he is merely defining "rosin B," it seems obvious to us

that he has only stated one characteristic of certain resinous substance which may fall within the category of "rosin B." The limitation in his instant application is "a resinous material" which is "50% or more" gasoline-insoluble. There may be many resinous materials which are 50 per cent or more insoluble in gasoline or aliphatic hydrocarbons which under no stretch of the imagination could be regarded as "rosin B." Some other ingredients of the resinous material, although obtained from the extraction of resinous wood with benzol, might make it fall without the category of "rosin B."

On this phase of the questions presented, appellant earnestly contends that he has supported his statement by proper references and that "rosin B" (being the lowest grade of rosin) always has 50 per cent or more of such insoluble matter. As we see it, the mere fact (if it be a fact) that "rosin B" ordinarily or even universally has that characteristic does not change the situation. Obviously, "rosin B" has other characteristics, and there is no teaching in either application that the best results are obtained where there is a lack of abietic acid and a superabundance of gasoline-insoluble material. If appellant seeks to teach this fact in his new application by amendment, it would seem to be new matter, and arguments and citations of scientific treatises, patents, or other documentary matter do not remedy this defect.

Appellant's motion to dismiss the appeal as to claims 11, 14, 15, and 17 is granted, and the decision of the Board of Appeals, affirming that of the examiner in the rejection of the claims at bar, is affirmed.

Affirmed.